## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**JAMES I. HUNT, JR.**                                       **CIVIL ACTION NO.**

**VERSUS**                                                           **20-348-JWD-EWD**

**ANDREW SAUL**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on July 15, 2021.

                                                       **ERIN WILDER-DOOMES**
                                                       **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**JAMES I. HUNT, JR.**                                         **CIVIL ACTION NO.**

**VERSUS**                                                      **20-348-JWD-EWD**

**ANDREW SAUL**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

James I. Hunt, Jr. ("Plaintiff"), who is proceeding *pro se* and *in forma pauperis*,[1] brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA" or the "Commissioner") denying his application for disability insurance benefits ("DIB").[2] Plaintiff has filed an Opening Brief,[3] the Commissioner has filed an Opposition Memorandum,[4] and Plaintiff has filed a Reply.[5]

Based on the applicable standard of review under § 405(g) there is not sufficient evidence to support the Commissioner's decision. Accordingly, it is recommended that the Commissioner's decision be reversed, and this matter be remanded to the Commissioner for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**I.    Procedural History**

Plaintiff filed an application for DIB[6] alleging disability beginning on December 1, 2017[7]

---

[1] R. Docs. 2, 3, 5, 6. References to documents filed in this case are designated by "R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "AR p. [page number(s)]."
[2] *See* R. Doc. 1 and AR pp. 152-58 (Application Summary for DIB); AR pp. 1-7 (Notice of Appeals Council Action).
[3] R. Doc. 19. Plaintiff initially attempted to file an opening brief via a January 21, 2021 letter that he sent directly to counsel for the Commissioner, who forwarded a copy to the chambers of the undersigned. R. Doc. 13. On February 11, 2021, a telephone conference was conducted, and the undersigned provided guidance to Plaintiff, including an explanation of why his letter was insufficient and the requirements of an adequate brief. With no opposition from the SSA, Plaintiff's oral motion for an extension of time to file a proper brief was granted. R. Docs. 16-17. Plaintiff's brief was received on March 8, 2021. R. Doc. 19.
[4] R. Doc. 21.
[5] R. Doc. 22.
[6] The DIB Application Summary is dated May 29, 2018; however, therein, it states that the SSA discussed Plaintiff's DIB application with Plaintiff on May 14, 2018. AR p. 152. The Disability Determination and Transmittal, Disability Determination and Explanation, and the Administrative Law Judge's decision reflect that the DIB application was actually filed on May 10, 2018. AR pp. 17, 84, 87. Furthermore, while the DIB Application Summary says that Plaintiff stated that he filed for or intended to file for Supplemental Security Income benefits, the record does not reflect that Plaintiff did so. AR p. 152.
[7] AR pp. 53, 87, 152, 189.

due to neck injuries, high blood pressure and diabetes.[8]  Plaintiff will meet the insured status requirements of the Social Security Act until December 31, 2022.[9]  After Plaintiff's claim was initially denied on October 24, 2018,[10] he requested a hearing before an ALJ.[11]  The hearing was held on August 26, 2019, at which Plaintiff, who was represented by counsel, testified.[12]  Vocational Expert ("VE") Kasey Crawford Suggs also testified.[13]

On October 1, 2019, the ALJ issued a notice of unfavorable decision.[14]  Plaintiff requested review by the Appeals Council through counsel.[15]  However, Plaintiff was not represented by counsel during the Appeals Council's review.[16]  On March 25, 2020, the Appeals Council issued its decision denying Plaintiff's request for review.[17]

On June 5, 2020, Plaintiff filed his Complaint in this Court.[18]  Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[19]

## II.  Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record

---

[8] AR pp. 87, 97, 180.
[9] AR pp. 19, 86, 167, 189.
[10] AR pp. 84, 96-97.
[11] AR p. 101.
[12] AR p. 116 (fee agreement); AR pp. 118-24 (Notice of Hearing); AR pp. 33-83 (transcript of hearing).
[13] AR pp. 17, 36, 68-81.
[14] AR pp. 14-31.
[15] AR p. 149-50.
[16] AR p. 9.
[17] AR pp. 1-7.
[18] R. Doc. 1.  Pursuant to this Court's Fourth Amended Administrative Order, Administrative Order 2020-5, "prescriptive, peremptive, and statute of limitation deadlines" were suspended until April 30, 2020 due to pandemic-created curtailed operations.  Therefore, the sixty-day time period in which Plaintiff was required to file his Complaint in this Court was suspended at the time of the Appeals Council's March 25, 2020 decision until April 30, 2020. Plaintiff's Complaint was timely filed thirty-six days later.
[19] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[20] If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[21]

### III.    The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[22] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[23] In the five-step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[24]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[25] If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[26] If the Commissioner proves other work exists which the claimant can perform, the

---

[20] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[21] *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[22] 20 C.F.R. §§ 404.1505; 416.905.
[23] 20 C.F.R. §§ 404.1520; 416.920.
[24] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[25] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[26] 20 C.F.R § 404.1520(g)(1).

claimant is given the chance to prove that he or she cannot, in fact, perform that work.[27]

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of December 1, 2017.[28] Next, the ALJ found that Plaintiff's "disorders of the neck/spine" were severe impairments.[29] At step three, the ALJ found that Plaintiff's impairments, singly or in combination, did not meet or medically equal the requirements of any listed impairments under the regulations, including Listings 1.02, 1.04, 1.06, and 1.07.[30] Next, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to cause some of his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with, and/or not wholly supported by, the medical evidence and other evidence in the record "and tend to diminish the persuasiveness of the alleged limitations."[31]

The ALJ then evaluated Plaintiff's RFC[32] to determine whether, despite Plaintiff's severe impairments, he was able to do any past relevant work or other work in the national economy. The ALJ found that Plaintiff retained the RFC to perform light work[33] with the following limitations:

---

[27] *Muse*, 925 F.2d at 789.
[28] AR p. 19 *citing* 20 C.F.R. § 404.1571, *et seq*. Plaintiff experienced a neck injury, including fractures, on December 1, 2017 after he fell off a mechanical bull and landed on his head. Plaintiff testified that he did not work after that date. AR pp. 21, 53, 55.
[29] AR pp. 19-20 *citing* 20 C.F.R. § 404.1520(c). Plaintiff also reported secondary impairments of diabetes and hypertension; however, because there was no evidence of end organ disease or additional limitations because of those impairments, the ALJ found that these secondary impairments had no more than a minimal effect on Plaintiff's ability to perform basic work-related activities and thus were not severe impairments. AR pp. 19-20, 87.
[30] AR p. 20 *citing* 20 C.F.R. Part 404, Subpart P, Appendix 1 and 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. These listings apply to musculoskeletal impairments.
[31] AR p. 23 and *citing* Plaintiff's testimony and the evidence of record.
[32] "Residual functional capacity" is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. §§ 404.1545; 416.945.
[33] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b). "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, *6 (S.S.A. Jan. 1, 1983). *See also* SSR 96-9P, 1996 WL 374185, *6 (S.S.A. July 2, 1996) ("If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs.").

lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday; never climb ladders, ropes, scaffolds, occasionally climb ramps, stairs; occasionally reach overhead with the left upper extremity, occasionally reach in all other directions with the left upper extremity, and consistent with Exhibit 12F/8, frequently handle and frequently finger with the right upper extremity.[34]

Given his RFC and the testimony of the VE,[35] the ALJ concluded that Plaintiff would not be able to perform his past relevant work of prison guard, plant supervisor, and lumber puller as described by the Dictionary of Occupational Titles ("DOT").[36]

Proceeding to the fifth step, the ALJ relied on the Medical-Vocational Guidelines[37] and the testimony of the VE to make his disability finding.[38] Specifically, the ALJ found that Plaintiff is an individual closely approaching advanced age with at least a high school education and the ability to communicate in English.[39] Considering the foregoing, the ALJ relied on the testimony of the VE to determine the extent to which Plaintiff's limitations eroded the unskilled light occupational base, and found that Plaintiff could perform the requirements of the representative

---

[34] AR p. 20, and specifically citing the medical evidence at "12F/8," which is Plaintiff's medical record of an April 11, 2019 visit with Dr. Horace Mitchell. *See* AR p. 1012.

[35] AR p. 25 *citing* 20 C.F.R. § 404.1565. The VE testified that Plaintiff's RFC would permit past relevant work as a plant supervisor as that job is described in the DOT; however, as performed, the demands of that position (*e.g.*, climbing ladders) would exceed Plaintiff's RFC. *See* the VE's testimony at AR pp. 70-71. *See also* 20 C.F.R. § 404.1520(f).

[36] DOT 372.667-018, DOT 511.135-010, and DOT 922.687-074, respectively. AR p. 69. The DOT comprises a categorical listing of job titles in the United States, along with descriptions of the maximum requirements for each job, including the associated exertion levels and reasoning abilities. *Sasich v. Colvin*, No. 15-461, 2016 WL 7826808, at *4 (M.D. La. Nov. 14, 2016), *report and recommendation adopted*, No. 15-461, 2017 WL 188133 (M.D. La. Jan. 17, 2017), *citing Gaspard v. Social Security Admin. Com.'r*, No. 07-943, 609 F.Supp.2d 607, 612 (E.D. Tex. April 8, 2009).

[37] 20 C.F.R. Part 404, Subpart P, Appendix 2.

[38] AR pp. 25-26 *citing* 20 C.F.R. §§ 404.1569 and 404.1569a. The Commissioner may use VE testimony at steps four and five of the sequential evaluation process to resolve complex vocational issues and provide evidence at the hearing before the ALJ. SSR 00-04p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

[39] AR p. 25 *citing* 20 C.F.R.§ 404.1563 (An individual approaching advanced age is defined as an individual aged 50-54. Plaintiff was born on January 6, 1966 and was 51 years old on the alleged disability onset date (*see* AR pp. 51, 84, 86, 152)); 20 C.F.R. § 404.1564 (Plaintiff testified that he went to two years of trade school (*see* AR p. 52 *and see* AR p. 95, noting Plaintiff completed fourteen years of school); and SSR 82-41, 1982 WL 31389 (S.S.A. Jan. 1, 1982) and 20 C.F.R. Part 404, Subpart P, Appendix 2 (finding that the transferability of Plaintiff's job skills was not material to the disability determination because using the Medical-Vocational Rules as a framework resulted in a finding that Plaintiff is not disabled, regardless of the transferability of his job skills).

occupations of counter clerk, information clerk, and/or office clerk.[40] Thus, the ALJ determined that Plaintiff was not disabled at any time during the relevant period, *i.e.*, his alleged disability onset date of December 1, 2017 through the date of the ALJ's decision on October 1, 2019.[41] As noted above, the Appeals Council denied review of the ALJ's decision, and thereby affirmed the ALJ's finding that Plaintiff was not disabled.[42]

### IV.   Law and Analysis

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[43] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[44] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[45] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[46] In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[47] Significantly, however, the ALJ has

---

[40] AR p. 26. The DOT classification codes for these unskilled occupations and the number of existing jobs in the national economy for each occupation are: DOT No. 249.366-010 with 102,399 jobs; DOT No. 237.367-018 with 90,143 jobs; and DOT No. 222.587-030 with 214,497 jobs, respectively. *Id.* and AR pp. 69-71 (*cf.* the VE's testimony, stating that the number of jobs existing for office clerk was 214,496).
[41] AR pp. 26-27.
[42] AR pp. 1-7.
[43] *Richardson v. Perales*, 402 U.S. 389 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (*superseded by statute on other grounds, see Stancle v. Colvin*, No. 4:15-00405, 2016 WL 3172784 (E.D. Tex. June 7, 2016)).
[44] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[45] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (*quoting Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).
[46] *Masterson*, 309 F.3d at 272; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[47] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (*superseded by statute on other grounds, see Stancle v. Colvin*, No. 4:15-00405, 2016 WL 3172784 (E.D. Tex. June 7, 2016)).

a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.' 'If the ALJ does not satisfy his duty, his decision is not substantially justified.'"[48]

### A. Substantial Evidence Does Not Support The ALJ's Step 5 Finding

The burden rests upon the claimant throughout the first four steps of the five-step sequential process to prove disability.[49] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education and past work experience, that he or she is capable of performing other work.[50]

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."[51] In his decision, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; never climb ladders, ropes, scaffolds, occasionally climb ramps, stairs; occasionally reach overhead with the left upper extremity, occasionally reach in all other directions with the left upper extremity, **and consistent with Exhibit 12F/8, frequently handle and frequently finger with the right upper extremity.**[52]

Considering this RFC, and Plaintiff's age, education, and past work experience, the ALJ determined at step five of the sequential analysis that other jobs exist in the national economy that Plaintiff can perform based on the testimony of the VE.[53] However, an independent review of the record reflects that this finding is not supported by substantial evidence of record and is flawed in at least two respects.[54]

---

[48] *Boyd*, 239 F.3d at 708, *citing Newton,* 209 F.3d at 458 (quoting *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995)).
[49] *Muse*, 925 F.2d at 789.
[50] 20 C.F.R § 404.1520(g)(1).
[51] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).
[52] AR p. 20 (emphasis added) *citing* AR p. 1012.
[53] AR p. 25.
[54] The undersigned does not reach *pro se* Plaintiff's arguments because independent review reflects that the ALJ's decision is not supported by substantial evidence of record on grounds not raised by Plaintiff. *See Brent v. Colvin*, No. 6:14-CV-03200, 2016 WL 817166, at *8 (W.D. La. Feb. 1, 2016), *report and recommendation adopted*, No. 6:14-CV-03200, 2016 WL 881831 (W.D. La. Mar. 1, 2016) ("Although no direct Fifth Circuit authority for this principle

1. **The ALJ's RFC Handling and Fingering Limitation Is Not Supported By The Evidence Upon Which He Relies**

The RFC limitations determined by the ALJ specifically state that the limitation of "frequently handle and frequently finger with the right upper extremity" is "consistent with Exhibit 12F/8," which is Plaintiff's April 11, 2019 visit with his personal physician, Dr. Horace Mitchell ("Dr. Mitchell").[55] In his discussion of Plaintiff's ability to do light work, including lifting 20 pounds on occasion and 10 pounds frequently, the ALJ states: "However, the undersigned included handling and fingering limitations with the right upper extremity consistent with Dr. Mitchell's findings in April 2019 [Ex. 12F/8]."  In his discussion of the State Disability Determination Service's opinion that Plaintiff could perform less than the full range of light work with additional manipulative limitations, the ALJ again states: "Nonetheless, the undersigned included handling and fingering limitations with the right upper extremity consistent with Dr. Mitchell's findings in April 2019 [Ex. 12F/8]."[56]

However, the handling and fingering limitations assigned by the ALJ are inconsistent with Dr. Mitchell's April 2019 findings, which provide, in pertinent part:

> History of Present Illness:
> Mr. Hunt returns for a follow-up he is a gentleman who is recovering from incomplete spinal cord injury that he sustained in 2017. Clinically he still has some left upper extremity weakness particularly in the C5 distribution manifested by weakness in his deltoid and supraspinatus muscle. **He is to have loss of dexterity in his right hand....**[57]

---

was located, courts in other circuits have addressed this issue. The Eighth Circuit has held that a court reviewing a Social Security disability ruling is empowered to raise issues on its own. *Battles v. Shalala*, 36 F.3d 43, 45. n. 2 (8th Cir. 1994). In *Womack v. Astrue*, No. CIV–01–167–W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008), a district court in Oklahoma raised issues *sua sponte*, relying upon a Fifth Circuit ruling holding that a 'reviewing court may not ... abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence,' quoting *Bridges v. Gardner*, 368 F.2d 86, 90 (5th Cir. 1996). Furthermore, the United States Supreme Court has held that a claimant need not exhaust issues in order to preserve his right to judicial review of those issues. *Sims v. Apfel*, 530 U.S. 103, 112 (2000). Therefore, this Court finds that it 'cannot ... ignore obvious and prejudicial errors, even if the litigants did not identify and debate them.' Womack v. Astrue, 2008 WL 2486524, at *5.").
[55] AR p. 20 *citing* AR p. 1012 and reciting part of the diagnosis *verbatim* at AR p. 23.
[56] AR. p. 24.
[57] AR p. 1012 (emphasis added).

8

Assigning a manipulative limitation of frequent use of the right upper extremity for handling and fingering is inconsistent with the evidence directly relied upon by the ALJ to assign that limitation, which clearly states Plaintiff has/will have loss of dexterity in his right hand. While this discrepancy standing alone does not warrant remand if there is other evidence in the record to support the right upper extremity fingering limitation, it is raised as an example of inconsistencies within the ALJ's decision and is related to another flawed finding by the ALJ that does warrant remand.

      **2. The ALJ's RFC Handling and Fingering Limitation Is Not The Same Limitation That Was Posed To The VE**

When the ALJ questioned the VE about other jobs in the national economy that a person with Plaintiff's age, education, work experience, and RFC could perform, he posed his hypothetical as follows:

> Q:….Hypothetical individual, same age, education, and vocational background as Mr. Hunt, who's –at all times is 50 years or older, with the exertional limitations of light. The posturals are going to all be occasional except no ladders, ropes, or scaffolding. The manipulatives are going to be such that overhead reaching on the right is going to be frequent; on the left is going to be never. In all other directions, the left is going to be occasional. Handling and fingering **bilaterally** is going to be frequent….[58]

The VE testified regarding three representational jobs that a person with Plaintiff's characteristics could perform, based on the RFC articulated by the ALJ at the hearing.[59] Finding that the VE testimony was consistent with the information contained in the DOT,[60] the ALJ adopted the VE's testimony as to those three jobs in his step 5 finding that Plaintiff could perform other work that existed in significant numbers in the national economy.[61]

---

[58] AR p. 70 (emphasis added).
[59] AR pp. 69-71.
[60] AR pp. 25-26, *citing* SSR 00-04p.
[61] AR p. 26 ("To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual

9

The ALJ's step 5 finding was made in error because the VE was not asked about an RFC in which a hypothetical claimant had a manipulative limitation comprised of "frequently handle and frequently finger with the **right upper extremity**" as stated in the ALJ's decision.[62] Rather, the ALJ posed an RFC in which a hypothetical claimant had a manipulative limitation comprised of "[h]andling and fingering **bilaterally** is going to be frequent."[63] The hypothetical is defective.[64] The ALJ did not specify the RFC limitation stated in his decision in his hypothetical to the VE, and there is no explanation in his decision for the difference.[65] "When eliciting expert vocational testimony, an ALJ typically poses a hypothetical question that incorporates all disabilities that the ALJ has found. If the disabilities recognized by the ALJ are reasonable under the evidence, and

---

with claimant's age, education, work experience and residual functional capacity. The vocation expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as" counter clerk, information clerk, office clerk … "Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience and residual functional capacity, the claimant is capable of making a successful adjustment ot other work that exists in significant numbers in the national economy.").

[62] AR p. 20.

[63] AR p. 70. There is an additional conflict between the RFC stated in the ALJ's decision with the RFC posed in the hypothetical to the VE. As reflected by comparison of the stated RFC and the hypothetical posed, the stated RFC has a limitation of "occasionally reach overhead with the **left upper extremity**," (AR p. 20, emphasis added) but the hypothetical posed to the VE involved a limitation of "overhead reaching on the right is going to be frequent; **on the left is going to be never**." AR p. 70 (emphasis added). The hypothetical limitation aligns with Plaintiff's testimony, which was that Plaintiff is unable to reach overhead with his left arm. AR pp. 60-61. However, as both limitations restrict overhead reaching to one arm, the specific arm used to reach overhead is unlikely to make a practical difference.

[64] *See Burgess v. Astrue,* No. 10-371, 2011 WL 1828377, at *22 (S.D. Tex. Apr. 21, 2011), *report and recommendation adopted*, No. 10-371, 2011 WL 1827241 (S.D. Tex. May 11, 2011) ("Because the hypothetical question veered from the RFC, there is a distinct likelihood that the question was based in part on an assessment the ALJ never made. *See Morris v. Bowen,* 864 F.2d 333, 336 (5th Cir. 1988) (per curiam) (hypothetical question must reasonably incorporate disabilities recognized by ALJ). Accordingly, it is respectfully recommended that the question was in error, and that the ALJ improperly relied upon the answer.") *See also Garza v. Astrue,* No. 08-789, 2010 WL 918343, *4 (W.D. Tex. Mar. 11, 2010): "When an ALJ poses an incomplete hypothetical question to a vocational expert, the ALJ cannot rely on the expert's opinion to find that the claimant is not disabled. *See Boyd,* 239 F.3d at 707." In *Garza,* the ALJ failed to include all of the plaintiff's limitations in his hypothetical but counsel had an opportunity to question the VE. Counsel included the limitation when questioning the VE. It was unclear to which of counsel's questions the VE responded, but the VE agreed that other work would be precluded. In any event, the VE's answer to counsel conflicted with the answer he provided to the ALJ. The ALJ used the answer the VE provided to the ALJ in finding that the plaintiff could perform other work, but did not explain why he used that answer rather than the one the VE provided to counsel. The court held: "This Court is of the opinion that the ALJ's determination that Plaintiff is not entitled to disability benefits should be remanded due to the ALJ's reliance on the answer to a defective hypothetical question."

[65] The ALJ's decision refers to several medical findings regarding Plaintiff's left and right extremities (AR pp. 21-24). However, there is no explanation in the decision for why the ALJ's stated RFC is different from the one posed to the VE, nor is there an explanation for why that difference does not impact the ALJ's reliance on the VE's testimony and his step 5 finding that Plaintiff could perform the jobs enumerated by the VE in response to a different RFC.

10

the ALJ's ultimate determination is consistent with the expert vocational testimony, the ensuing decision is considered to be supported by substantial evidence.[66] However, "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions ... a determination of non-disability based on such a defective question cannot stand."[67] Moreover, the fact that counsel was afforded an opportunity to ask follow-up questions did not salvage the hypothetical as a proper basis to determine non-disability.[68] Even if the underlying record supports the right upper extremity handling and fingering limitation stated in the ALJ's decision, it is not clear from the record whether the jobs supplied by the VE, premised upon bilateral handling and fingering, are jobs that Plaintiff could perform with the more restrictive limitation stated in the RFC.[69]

For the above reasons, the ALJ's step 5 finding regarding other jobs that Plaintiff could perform, premised upon an RFC that is different from the RFC posed to the VE at the hearing, is not supported by substantial evidence of record. The Fifth Circuit has determined that district

---

[66] *Parker v. Barnhart,* 431 F. Supp. 2d 665, 670 (E.D. Tex. 2006) *citing Morris v. Bowen,* 864 F.2d 333 (5th Cir. 1988).
[67] *Boyd*, 239 F.3d at 707.
[68] "[F]ailure to point out the problems in a defective hypothetical [does not] automatically salvage [ ] that hypothetical as a proper basis for a determination of non-disability." *Bridges v. Commissioner of Social Sec. Admin.,* 278 F. Supp. 2d 797, 806 (N.D. Tex. 2003), *citing Boyd,* 239 F.3d at 707, and *see id.*: "[T]he holding in *Bowling* stated only that an ALJ may not rely on a hypothetical without giving the claimant an opportunity to correct deficiencies in the question. It did not state that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability."
[69] The DOT listings for the proffered occupations, *i.e.*, counter clerk, DOT No. 249.366-010; information clerk, DOT No. 237.367-018; and office clerk, DOT No. 222.587-030, do not indicate if handling and fingering by both hands is required, or if handling and fingering by one extremity is sufficient. On remand, it is possible that evidence could be presented to establish that a hypothetical claimant with Plaintiff's age, education, work experience and RFC as stated in the ALJ's decision could perform these jobs with the right upper extremity fingering limitation; however, the evidence in the current record does not support that finding.

courts reviewing denials must apply a harmless error analysis.[70] An error is harmless if it does not "affect the substantial rights of a party," or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error.[71] It cannot be said that the ALJ's error was harmless. Plaintiff's substantial rights were harmed thereby, and if the ALJ had articulated the correct RFC limitation, it is not inconceivable that the VE's testimony (and the ALJ's decision based on that testimony) would have been different.

The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.' 'If the ALJ does not satisfy his duty, his decision is not substantially justified.'"[72] Because the ALJ relied on testimony elicited by a defective hypothetical question, the Commissioner has not sustained his burden of proof at step five of the sequential evaluation process to show that, despite Plaintiff's RFC, he could perform other work that existed in significant numbers in the national economy.

## V.     Recommendation

The record does not establish that substantial evidence supports the finding that Plaintiff is not disabled as the ALJ's determination was based on a hypothetical posed to the VE that did not reflect the ALJ's ultimate RFC determination. Further, the error was not harmless. Accordingly, **IT IS RECOMMENDED** that, under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **REVERSED,** and this action be **REMANDED** to the Commissioner for a determination of Plaintiff's eligibility for disability benefits based on a

---

[70] *Burgess,* 2011 WL 1828377, at *22, *citing Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless.") (citation omitted). The *Audler* court further explained that "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.' *Id.* (quoting *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988)).
[71] *Swindle v. Colvin,* No. 12-0323, 2013 WL 12106130, at *6 (S.D. Tex. Sept. 23, 2013), *citing Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), *Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003), and *Bornette v. Barnhart,* 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("Harmless error exits (sic) when it is inconceivable that a different administrative conclusion would have been reached absent the error.").
[72] *Boyd,* 239 F.3d at 708, *citing Newton,* 209 F.3d at 458 (quoting *Ripley,* 67 F.3d at 557).

record that accurately takes into account Plaintiff's residual functional capacity as ultimately determined by the ALJ.

Signed in Baton Rouge, Louisiana, on July 15, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**